FILED
15-0567
10/30/2015 5:49:26 PM
tex-7628358
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

## NO. 15-0567

### IN THE SUPREME COURT OF TEXAS
### AUSTIN, TEXAS

MARY MOCZYGEMBA,

Petitioner

v.

THOMAS J. MOCZYGEMA and HARRY LEE MOCZYGEMBA,

Respondents

## RESPONSE TO PETITION FOR REVIEW

JOYCE W. MOORE
State Bar No. 14357400
jwmoore@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
rramsey@langleybanack.com
PAULA C. BOSTON
State Bar No. 24089661
pboston@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212
Telephone: 210. 736.6600
Telecopier: 210. 735.6889

ATTORNEYS FOR RESPONDENTS
THOMAS J. MOCZYGEMBA and
HARRY LEE MOCZYGEMBA

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................1

INDEX OF AUTHORITIES .............................................................................3

ISSUE PRESENTED ........................................................................................3

> The court of appeals correctly affirmed the trial court's summary judgment against Mary based on limitations.

UNBRIEFED ISSUES........................................................................................5

STATEMENT OF FACTS................................................................................ 8

SUMMARY OF THE ARGUMENT...............................................................10

ARGUMENT....................................................................................................12

The court of appeals correctly affirmed the trial court's summary judgment against Mary based on limitations. ........................................12

A. The court of appeals correctly applied *S.V.'s* holding that, even in a breach-of-fiduciary-duty case, the injury must be objectively verifiable to avoid limitations. ......................................................12

B. The doctrine of "fraud/fraudulent concealment" was waived and cannot save Mary's case from limitations.......................................15

C. There was no failure, nor any admission of failure, to disclose material facts. ..............................................................................19

D. A rebuttable "presumption of unfairness" does not apply to overcome the bar of limitations....................................................................21

E. The deeds are not "objectively verifiable evidence" of injury. ....... 24

F. Mary's denial below of an injury arising from "inadequate sales price" precludes her from relying on it now. .................................. 24

PRAYER ........................................................................25

CERTIFICATE OF COMPLIANCE............................................. 26

CERTIFICATE OF SERVICE.................................................... 26

# INDEX OF AUTHORITIES

## Cases

*Barnett v. Barnett,*
  67 S.W.3d 107 (Tex. 2001) .................................................................. 18

*Carrell v. Denton,*
  157 S.W. 2d 878 (Tex. 1942) .............................................................. 19

*City of Houston v. Clear Creek Basin Auth.,*
  589 S.W.2d 671 (Tex. 1979) ............................................................... 22

*Computer Associates Int'l v. Altai,*
  918 S.W.2d 453 (Tex. 1996) .......................................................... 13, 18

*Doty v. Barnard,*
  47 S.W. 712 (Tex. 1898) .................................................................... 22

*Earle v. Ratliff,*
  998 S.W.2d 882 (Tex. 1942) ........................................................... 11, 18

*Huie v. De Shazo,*
  922 S.W.2d 920 (Tex. 1996) ............................................................... 20

*International Banker's Life Ins. Co.  v. Holloway,*
  368 S.W.2d  567 (Tex. 1963) .............................................................. 15

*Joe v. Two Thirty Nine Joint Venture,*
  145 S.W.3d 150 (Tex. 2004) ............................................................... 19

*Johnson v. Peckham,*
  120 S.W.2d 786 (Tex. 1938) ............................................................... 20

*KPMG Peat Marwick v. Harrison County Housing Finance Corp.,*
  988 S.W.2d 746 (Tex. 1999) .......................................................... 15, 17

*Moczygemba v. Moczygemba,*
  466 S.W.3d 212 (Tex. App.—San Antonio 2015, pet. filed) ...........10, 15, 17

*Montgomery v. Kennedy,*
  669 S.W.2d 309 (Tex. 1984) ............................................................... 20

*Rosenbaum v. Texas Building & Mortgage Co.,*
  167 S.W.2d 506 (Tex. 1943) ............................................................... 22

*Slay v. Burnett Trust*
  *Co.,* 187 S.W.2d 377 (Tex. 1945) ........................................................ 15

*SmithKline Beecham Corp. v. Doe,*
  903 S.W.2d 347 (Tex. 1995) ............................................................... 21

*S.V. v. R.V.,*
    933 S.W. 2d 1 (Tex. 1996) .............................................................. *passim*
*Valdez v. Hollenbeck,*
    465 S.W.3d 217 (Tex. 2015) ................................................................ 16
*Via Net v. TIG Ins. Co.,*
    211 S.W.3d 310 (Tex. 2006) ..........................................................13, 21
*Wagner & Brown Ltd., v. Horwood,*
    58 S.W.3d 732 (Tex. 2001) ..................................................................17

4

## ISSUE PRESENTED

The court of appeals correctly affirmed the trial court's summary judgment against Mary based on limitations.

A.  The court of appeals correctly applied *S.V.'s* holding that, even in a breach-of-fiduciary-duty case, the injury must be objectively verifiable to avoid limitations.

B.  The doctrine of "fraud/fraudulent concealment" was waived and cannot save Mary's case from limitations.

C.  There was no failure, nor any admission of failure, to disclose material facts.

D.  A rebuttable "presumption of unfairness" does not apply to overcome the bar of limitations.

E.  The deeds are not objectively verifiable evidence of an injury.

F.  Mary's denial below of an injury arising from an "inadequate sales price" precludes her from relying on it now.

## UNBRIEFED ISSUES

I.  The lack of mineral reservations in the deeds was not inherently undiscoverable, because the omissions were apparent from the face of the recorded deeds, and even if a fiduciary relationship existed between Mary and her sons, she was aware of the need to inquire into the terms of the transactions and was able to do so before she signed the deeds.

II.  More than four years before she filed suit in 2012, Mary knew, or in the exercise of reasonable diligence should have known, that the deeds she signed in 2000 omitted mineral reservations in her favor.

This is a case of seller's remorse fueled by the unexpected oil bonanza in Karnes and Wilson Counties following the advent of "fracking" and the discovery of the Eagle Ford shale. It is not, as Petitioner Mary Moczygemba claims, a "typical" breach-of-fiduciary-duty case—nor is it about the exploitation of "seniors."[1] Rather, this case centers on the legal and evidentiary requirements for the application of the discovery rule, established by this Court in *S.V. v. R.V.* as the threshold for avoiding limitations, even in cases alleging breach of fiduciary duty. 933 S.W. 2d 1, 23 (Tex. 1996). Mary's petition seeks to change that threshold and jettison society's interests in preventing stale and fraudulent claims by allowing "presumptions" to suffice for the application of the discovery rule in breach-of-fiduciary-duty cases, even when there is no objectively verifiable evidence of actual injury or fraudulent intent by the fiduciary.

Although Mary does not acknowledge it, she essentially asks this Court to ignore several of its previous opinions to allow her to rely on "defenses" to limitations, which she did not raise below. Meanwhile she disregards pleadings that she filed and which contravene her positions on

---

[1]If anyone exploited Mary's "senior status," it was her other children, who threatened to abandon her if she did not sue to recover the minerals for them to share. *2CR:211-221, 624-27/1414–24, 1827–29.*

6

appeal. Those pleadings include her express disavowal of any claim of injury arising from the "inadequate sales price." *2CR:269/1472.*[2]

Mary also avoids mentioning that she has retained the cash proceeds from the sale, and has continued to graze her cattle and use the weekend house on one of the tracts for fifteen years. *1CR:460, 608, 937/455, 603, 932; 2CR 646, 650/1849, 1853.* Now she wants to subvert the deal by taking back all the minerals she conveyed—minerals that were so inconsequential to her at the time that, according to her story twelve years later, she "didn't think about it." *2CR:308/1511.* Instead of living with the choices she made and the benefits she accepted, she seeks in hindsight to undo the deeds she signed and to "do over" the case she pled below.

This case is not about a court changing Texas jurisprudence; it is about a seller changing her mind. Mary's petition for review presents no issues that this Court has not already decided adverse to her position.

---

[2] "CR:___/____" – electronic pagination/clerk's pagination.

## STATEMENT OF FACTS

The court of appeals opinion correctly states the nature of the case and provides a more accurate statement of facts than Mary's petition for review, which contains several incorrect and inadvertently misleading statements, omissions, and arguments.

For example, Mary claims that her sons Harry and Tommy "persuaded [her] to sell them the surface interest in the 412 acres …" *Pet. at 2.* Actually, they did not persuade her to do anything: she sold the land at a price and on terms that she herself set, with no mention of mineral reservations. *1CR: 505-06, 692/500-01, 687.* "At no point," says Mary, "did they tell [her] that they were acquiring the minerals from her." *Pet. at 2.* More accurately, at no point did Mary tell them or the attorney who drafted the deeds that she wanted to reserve the minerals. *1CR:324-26/319-20.*

"[T]here's no notes anywhere where it even discusses oil and gas," said the attorney who prepared the deeds. "And I know that if she would have asked me about it, I would have answered it." *1CR:326/321.* The nonexistence of any written notes concerning the minerals as well as the absence of any mineral reservation in the deeds reflected that the conveyances were "what Ms. Moczygemba wanted and how she wanted it." *1CR 326/321.*

8

Mary complains that her sons did not tell her "she should consult with any attorney." *Pet. at 2.* But they drove her to the office of the attorney who had represented her in previous matters, and no one prevented her from reading the deeds or asking questions of the attorney who drafted them. *1CR:266, 659-61, 709, 717/ 261, 654-56, 709, 712.*

Mary insinuates that the transactions were "unfair" to her because Harry and Tommy acquired the land for less than its market value. *Pet. at 11-12.* But she herself set the price. *1CR:505-06, 692/500-01, 687.* Furthermore, cash formed only a part of the consideration: Mary also received free grazing for her cattle, free assistance with her cattle operations, and use of the weekend farm house on Harry's land for her lifetime. *1CR:460, 608, 937/455, 603, 932; 2CR 646, 650/1849, 1853.*

Regardless, Mary abandoned her "unfairness" claim when, in her final trial pleading, she ratified the transactions in all respects—except for the conveyance of the minerals. *2CR:250/1453.* She also stipulated in her response to the motion for summary judgment that the "inadequate sales price is not the injury complained of" and that "the only injury complained of is the conveyance of the minerals." *2CR:269/1472.*

Under these circumstances, Harry and Tommy filed a motion for summary judgment on limitations in which they urged three grounds: (1) the nature of the alleged injury was not inherently undiscoverable; (2) Mary

9

offered no objectively verifiable evidence of injury; and (3) she knew or reasonably should have known of her injury as a matter of law. *2CR:51-52/1254-55.* The trial court granted the summary judgment without specifying the grounds. *2CR:802-04/2005-07.* The court of appeals affirmed based on the lack of objectively verifiable evidence, without reaching the remaining grounds. *Moczygemba v. Moczygemba*, 466 S.W.3d 212, 219 n. 2 (Tex. App.—San Antonio 2015, pet. filed).

## SUMMARY OF THE ARGUMENT

"Petitioners often overstate the effect of lower court opinions," Mary admits. *Pet. at 4.* Here, she has not only overstated the effect of the lower court's opinion, she has misstated the effect of the precedent that it followed.

The court of appeals correctly applied this Court's holding in *S.V.* that, for the discovery rule to apply, even in a case where the parties have a fiduciary relationship, there must be objectively verifiable evidence that the plaintiff was in fact injured and that the injury was caused by the wrongful conduct of another. *S.V.*, 933 S.W.2d at 6, 23.

Although Mary now claims "fraud/fraudulent concealment," she waived this alternative defense to limitations by not raising it in the trial court. Regardless, her attempt to substitute a fiduciary's alleged failure to disclose (constructive fraud) for fraudulent intent or intent to conceal the

10

wrongdoing (actual fraud) ignores the equitable underpinnings of delaying limitations based on fraudulent concealment and presents a proposal that this Court has already rejected. *See Earle v. Ratliff*, 998 S.W.2d 882 (Tex. 1942).

Mary's attempts to rely on a "presumption of unfairness" or alleged "admissions" of failure to disclose material facts as a substitute for objectively verifiable evidence of injury ignores the summary-judgment evidence, or lack of it, in this case, as well as admissions and positions that appear in her pleadings—including her express "confirmation" of the deeds and her disavowal of any claim of injury based on "the inadequate sales price." *2CR:250, 269/1453, 1472.* Mary also does not address her problem that, because she relies on the discovery rule, "the evidence must rise to a higher level of certainty." *S.V.*, 933 S.W.2d at 19. Had she filed her suit timely, rather than twelve years after she signed the deeds, she would not be facing the much tougher evidentiary standard that now confronts her in the discovery-rule context.

Mary focuses her arguments solely on the "wrongful conduct" component of a "legal injury," while failing to offer anything other than her own speculative testimony to show that she was in fact injured when she signed the deeds in 2000. Those deeds, each of which plainly omitted a

11

mineral reservation in her favor, do not show that Mary did not intend to convey the minerals; they show only that the conveyances occurred.

Mary's remorse today over having conveyed the minerals does not equate to an "injury in fact" in 2000. *See S.V.*, 933 S.W.2d at 15 ("While R. fit a behavioral profile for someone who has been sexually abused, the experts acknowledged that that does not mean she had actually been abused.") Without objectively verifiable evidence of an "injury in fact" as well as "wrongful conduct of another," the discovery rule does not apply here. *See id.*

## ARGUMENT

**The court of appeals correctly affirmed the trial court's summary judgment against Mary based on limitations.**

> **A. The court of appeals correctly applied *S.V.'s* holding that, even in a breach-of-fiduciary-duty case, the injury must be objectively verifiable to avoid limitations.**

In an effort to escape the statute of limitations and avoid honoring the deeds she signed fifteen years ago, Mary claims that the court of appeals "misapplied" this Court's holding in *S.V. v. R. V*, 933 S.W.2d 1 (Tex. 1996). It did not. The court of appeals correctly determined that *S.V.* controls and appropriately applied it. Granting Mary's request for relief would require this Court to overrule its opinion in *S.V.* that the two-part discovery rule test applies even if the parties are in a fiduciary relationship.

*S.V.* clarified that the nature of the injury, not the label attached to the cause of action, determines whether the discovery rule will apply. *See* 933 S.W.2d at 7; *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) ("Our attempts to bring predictability and consistency to discovery rule jurisprudence have focused on types of injury, not causes of action.").

In *S.V.* this Court further explored the two-part test for applying the discovery rule, first announced in *Computer Associates Int'l v. Altai*, 918 S.W.2d 453 (Tex. 1996), and ultimately held that, even in breach of fiduciary duty cases, a plaintiff must furnish objectively verifiable evidence that she was in fact injured by the wrongful conduct of another before the discovery rule can apply. *S.V.*, 933 S.W.2d at 23.

Mary offered nothing but her own speculative testimony to support her allegation that, had she thought about it at the time she signed the deeds, she would have wanted to reserve the minerals. *2CR:509/1212.* Therefore, the court of appeals correctly held that the discovery rule did not apply because this testimony was subjective, not objective. *See S.V.* 933 S.W. 2d at 15 ("[T]he bar of limitations cannot be lowered for no other reason than a swearing match between parties over facts.").

The analysis applicable here is indistinguishable from the discovery-rule analysis in *S.V.*, where a daughter sued her father for behavioral and emotional injuries allegedly caused by childhood sexual abuse. 933 S.W.2d

13

at 3, 12. Because the daughter filed suit after limitations expired, she relied on the discovery rule, claiming that repressed memories caused by the trauma of her father's abuse prevented her from bringing the suit within the limitations period. *Id.* at 3, 9-12.

Although the cause of action pled in *S.V.* was for negligence, the fiduciary relationship that existed as a matter of law between the father and daughter during her minority furnished the framework for this Court's discovery-rule analysis. 933 S.W.2d at 8, 13, 23. This was most clearly illustrated by the fact that the "special relationship between parent and child" was one of the factors in this Court's "assum[ing] without deciding" that the daughter's injury was inherently undiscoverable. *Id.* at 8.

When viewed in the fiduciary context, the daughter's allegations of sexual abuse in *S.V.*, if true, presented a particularly egregious case of fiduciary self-dealing. The father's denial that the abuse occurred also confirmed that no disclosure of material facts was made at the time of the alleged abuse or in the intervening years. And yet, after recognizing that the "egregiousness" of the alleged conduct is not a factor governing the application of the discovery rule "because it cannot provide a workable standard," this Court held that the daughter had no objectively verifiable

14

evidence to show that the abuse had in fact occurred or that her present symptoms were caused by the abuse. 933 S.W.2d at 15, 23-24.

At least two of the cases cited in *S.V.* also involved allegations of fiduciary self-dealing and non-disclosure; however, in each of those cases a "paper trail" furnished objectively verifiable evidence to show the injury and the wrongful conduct. *S.V.*, 933 S.W.2d at 7 (citing *International Banker's Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 580 (Tex. 1963) ("[S]tock transfer records and board meeting minutes proved officers' and directors' misdealing") and *Slay v. Burnett Trust Co.,* 187 S.W.2d 377, 385-87 (Tex. 1945) ("[P]aper trail detailed self-dealing")). Here, no "paper trail" nor any other objectively verifiable evidence supports Mary's claims.

### B. The doctrine of "fraud/fraudulent concealment" was waived and cannot save Mary's case from limitations.

#### 1. Mary did not raise "fraud/fraudulent" in the trial court.

To avoid the "objectively verifiable evidence of injury" requirement, Mary tries to recast her case on appeal as one for "fraud/fraudulent concealment." *Pet. at 6-8.* It is not. As the court of appeals correctly noted, the only "defense" Mary pled or raised in her summary-judgment response was the "discovery rule," based on *S.V.'s* two-part test. *Moczygemba*, 466 S.W.3d at 216. Her failure to raise "fraud/fraudulent concealment" below waived that point on appeal. *KPMG Peat Marwick v.*

15

*Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 749-50 (Tex. 1999) ("[A] party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense."); *S.V.*, 933 S.W.2d at 24 (declining to decide whether the objectively-verifiable element would apply to cases of fraud or fraudulent concealment because the plaintiff had not plead fraud or fraudulent concealment).

### 2. There is only one "discovery rule."

In an attempt to avoid her waiver of "fraud/fraudulent-concealment," Mary asserts that "there are, in effect, two discovery rules," of which she claims "fraud/fraudulent concealment" is one. *Pet. at 6.* But as this Court has clarified, only one exception to limitations can be "properly referred to as the discovery rule," and it applies only if "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V.,* 933 S.W.2d at 4, 6.

Although accrual of a cause of action for limitations purposes may also be deferred in cases of fraud or fraudulent concealment, this defense is distinct from the discovery rule and is governed by different substantive and procedural rules. *S.V.*, 933 S.W.2d at 4; *see also Valdez v. Hollenbeck,*

16

465 S.W.3d 217, 229 (Tex. 2015) ("We have recognized two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment."); *Wagner & Brown Ltd., v. Horwood,* 58 S.W.3d 732, 736 (Tex. 2001) (holding that an alleged misrepresentation may be relevant to a fraudulent-concealment claim, but it is irrelevant to a discovery-rule analysis because "[t]he discovery rule exception and tolling based on fraudulent concealment are distinct concepts that exist for different reasons"). Pleading the discovery rule, as Mary did, does not equate to pleading "fraud/fraudulent concealment," as Mary did not.

In reiterating this Court's holdings that there are "two exceptions" to the application of limitations—"the discovery rule and the doctrine of fraudulent concealment"—the court of appeals noted that Mary pled only one of them: "the discovery rule." *Moczygemba*, 466 S.W.3d at 215. Therefore, only the discovery rule, not fraud or fraudulent concealment, is at issue here, and it is too late for Mary to assert additional defenses that she did not raise below. *Cf. KPMG*, 988 S. W. 2d at 749-50.

### 3. A fiduciary's alleged failure to disclose, without more, is insufficient to avoid limitations based on "fraud/fraudulent concealment."

Even assuming hypothetically that Mary had properly raised "fraud/fraudulent concealment" below, her argument that fiduciary non-

17

disclosure or "constructive fraud" is sufficient to toll limitations is legally unsound.

Unlike a discovery-rule defense, deferring accrual of a cause of action in cases of fraud or fraudulent concealment resembles equitable estoppel. *Computer Associates*, 918 S.W.2d at 456. In such cases, "accrual is deferred because a person cannot be permitted to avoid limitations by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. Mary's assertion that constructive fraud, for which no intent to deceive is required, should be sufficient to toll limitations ignores the crucial role that intent plays in providing a policy justification for deferring accrual of a cause of action based on fraud or fraudulent concealment. *See Barnett v. Barnett*, 67 S.W.3d 107, 126 (Tex. 2001) ("Constructive fraud … is not the equivalent of common-law fraud. In order to establish constructive fraud, it is not necessary to establish fraudulent intent or other elements of common-law fraud.").

Mary also ignores the fact that not every fiduciary failure to disclose is intentional or meant to conceal facts for the purpose of allowing limitations to expire. Absent an actual awareness of wrongfulness or injury coupled with an intent to conceal the wrongdoing from the plaintiff, a fiduciary's failure to disclose facts is insufficient to prove fraud or fraudulent concealment to avoid limitations. *Earle*, 998 S.W.2d at 888 (refusing to

18

equate fiduciary non-disclosure with fraudulent concealment absent additional evidence of fraudulent intent and that "the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff"); *see also Carrell v. Denton*, 157 S.W. 2d 878, 879 (Tex. 1942) (describing as "unsound" the assertion that merely because the relationship between a physician and patient involves trust and confidence, fraudulent concealment can be imputed to a non-disclosing doctor).

### C. There was no failure, nor any admission of failure, to disclose material facts.

The record does not support Mary's claim that her sons "admitted" a breach of fiduciary duty of disclosure—or that any such breach occurred. *Pet. at 6.* Nor does any such alleged "admission" constitute objectively verifiable evidence that Mary was in fact injured by conveying the mineral interests. *Pet. at 12.*

A fiduciary's duty of full disclosure is measured by the nature and scope of the relationship. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159-60 (Tex. 2004) (holding that an attorney's fiduciary duty to a client extends only to dealings within the scope of the underlying relationship of the parties and "his duty to inform does not extend to matters beyond the scope of the representation").

If, as *Joe* confirmed, an attorney's fiduciary duties are limited by the scope of his representation, then laymen are entitled to at least the same

protection. Here, to the extent that any informal fiduciary relationship existed between Mary and her sons, it was limited to helping with her farming and ranching operations. *1CR:605-09/610-14.* It did not include advising her on legal matters. For legal representation in the past, Mary had gone to the same attorney whose office prepared the deeds she now seeks to partially rescind. *1CR:445-48/450-53.*

Even when a fiduciary duty exists, the duty of full disclosure requires only that the fiduciary relate "all *material* facts *known* to [him] that might affect [the beneficiaries'] rights." *Huie v. De Shazo*, 922 S.W.2d 920, 923 (Tex. 1996) (emphasis added) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984)); *see also Johnson v. Peckham*, 120 S.W.2d 786, 787-88 (Tex. 1938). A fiduciary duty does not include the requirement to read the beneficiary's mind. Mary's excuse for not mentioning the minerals until years later (and after they had become valuable) was that she "didn't think about it." *2CR:308/1511.* Therefore, even if Harry and Tommy had been able to read her mind, the mineral pages were blank.

Although Mary apparently thought the minerals had more value in 2012 when she filed suit than when she sold them, she offered no evidence to show that the inclusion of the minerals in the sales added any benefit to her sons or caused any injury to her *at the time the deeds were signed in 2000.*

Mary did not create a fact issue on the elements necessary to support her allegation that the lack of a mineral reservation was a "material fact" to her or anyone else at the time she signed the deeds, or that her sons "knew" about her unexpressed (and allegedly forgotten) wish to retain them. Therefore, any lack of discussion between Mary and her sons about minerals was not, and could not be, an "admitted" breach of a fiduciary duty of full disclosure. Nor could it serve as a substitute for objectively verifiable evidence that Mary was in fact injured by the lack of mineral reservations and that this injury was due to the wrongful conduct of another.

**D.  A rebuttable "presumption of unfairness" does not apply to overcome the bar of limitations.**

**1. Mary waived her "presumption of unfairness" assertion by failing to raise it below.**

Harry and Tommy were not required to negate theories that Mary did not raise in the trial court; they were "only required to meet [her] case as pleaded" and as presented in her response to their summary-judgment motion. *Via Net,* 211 S.W.3d at 313 (quoting *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995)). Mary's proposal to replace objectively verifiable evidence of injury with a "presumption of unfairness" does not appear in her response to the motion for summary judgment. *2CR:256-70/1459-73.* Therefore, she waived this point on appeal by not

21

raising it below. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 674-75 (Tex. 1979).

## 2. Mary's confirmation of the deeds further precludes her reliance on any "presumption of unfairness."

Mary is additionally precluded from relying on any "presumption of unfairness" to show an alleged injury from the face of the deeds because, in her final trial pleading, she expressly ratified those transactions. *2CR:250/1453.*

Although Mary purported to confirm only the conveyances of the surface, her partial ratification and her retention of the consideration she received, in light of her knowledge of the facts she now claims constituted a breach of fiduciary duty, resulted in a ratification of the entire transaction. *See Doty v. Barnard*, 47 S.W. 712, 714 (Tex. 1898) ("A person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part and this applies to deeds, wills, and all other instruments whatever."); *Rosenbaum v. Texas Building & Mortgage Co.*, 167 S.W.2d 506, 508 (Tex. 1943) ("An express ratification is not necessary; any act based upon a recognition of the agreement as subsisting or conduct inconsistent with an intention to avoid it has the effect of waiving the right to rescission.").

### 3. The discovery rule's stricter evidentiary standard precludes substituting a "presumption of unfairness" for an objectively verifiable injury.

Mary's attempt to substitute a "presumption of unfairness" for objectively verifiable evidence of legal injury confuses two different standards of proof and ignores the point this Court made in *S.V.*: the discovery rule's standard concerning objectively verifiable evidence to avoid limitations is a much tougher evidentiary proposition than that required to create a fact question on liability at a trial on the merits. 933 S.W.2d at 19 ("Had [the plaintiff filed suit before limitations ran], the conflict in the evidence would be for the jury to resolve. Because she did not, however, and because she thus relies on the discovery rule, the evidence must rise to a higher level of certainty.").

If Mary had "asserted her claim within the period prescribed by the Legislature, she would have been entitled to prosecute her claim despite any weaknesses in her proof. Because she did not do so, greater verifiability is necessary at the threshold for invocation of the discovery rule." *S.V.*, 933 S.W.2d at 25. Although her uncorroborated self-serving assertions may be sufficient to create a presumption of unfairness to shift the burden of proof at trial, they do not provide objectively verifiable proof of injury to overcome limitations. *See id.*

**E.    The deeds are not "objectively verifiable evidence" of injury.**

A "legal injury" consists of an injury in fact caused by the wrongful conduct of another. *S.V.,* 933 S.W.2d at 6. Both of these elements are missing here. Mary's uncorroborated testimony concerning her claimed intent is insufficient in the discovery-rule context to preclude a summary judgment because it is not objectively verifiable. *See S.V.,* 933 S.W.2d at 15 (holding that the testimony of an interested witness is not objectively verifiable). Because the conveyance of minerals is not inherently wrongful or injurious, there must be some objective evidence—such as corroborative documentation or disinterested-witness testimony—for the discovery rule to apply. *See Id.*

The deeds themselves do not provide objective proof that Mary did not mean to convey the minerals; they only prove that she did convey them. The sole evidence that she offered to support her alleged "injury in fact" was her own testimony—and even that was nothing more than conclusory speculation that, had she thought about it in 2000, she would have wanted to keep the minerals. *2CR:308/1511.*

**F.    Mary's denial below of an injury arising from "inadequate sales price" precludes her from relying on it now.**

In her response to the summary-judgment motion, Mary expressly disavowed any claim of injury based on an inadequate sales price.

*2CR:269/1472.* ("The inadequate sales price is not the injury complained of.... The injury complained of is the conveyance of the minerals. .... Mary knew what the sales price was at the time of the sale. She had no idea that she was conveying her minerals along with the surface. *This is the legal injury.*") (emphasis added). Nevertheless, she now tries to rely on the "below market price" as objectively verifiable evidence of breach of fiduciary duty. *Pet. at 15.* But she admitted below that there was no injury in fact from the "inadequate price." *2CR:269/1472.* Therefore, her claim is procedurally precluded by waiver and substantively irrelevant to limitations.

## PRAYER

For these reasons, Respondents ask this Court to deny the petition for review and grant them all other relief to which they are entitled.

Respectfully submitted,

*/s/ Joyce W. Moore*
JOYCE W. MOORE
State Bar No. 14357400
jwmoore@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
rramsey@langleybanack.com
PAULA C. BOSTON
State Bar No. 24089661
pboston@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Ninth Floor
745 East Mulberry Avenue

25

San Antonio, Texas 78212
Telephone: 210. 736.6600
Telecopier: 210. 735.6889

ATTORNEYS FOR RESPONDENTS
THOMAS J. MOCZYGEMBA and
HARRY LEE MOCZYGEMBA

## CERTIFICATE OF COMPLIANCE

I certify that the number of words in this Response to Petition for Review, including its headings, footnotes, and quotations, is **4331**.

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been sent to the following on October 30, 2015:

James J. Harnett, Jr.
Email: jim@hartnettlawfirm.com
Will Ford Hartnett
Email: will@hartnettlawfirm.com
THE HARTNETT LAW FIRM
2920 N. Pearl Street
Dallas, Texas  75201
Telephone: 214.742.4655
Telecopier: 214.742.4656

*/s/ Robinson C. Ramsey*
ROBINSON C. RAMSEY

26